# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO EASTERN DIVISION

Christian Emory,

*On behalf of himself and all others similarly situated*,

Plaintiff,

*v.*

Ampler Burgers Ohio, LLC,

Defendant.

Case No. 20-cv-04133

Judge Michael H. Watson

Magistrate Judge Chelsey M. Vascura

## PLAINTIFF'S MOTION FOR APPROVAL

## OF COLLECTIVE ACTION SETTLEMENT

## TABLE OF CONTENTS

I.    SUMMARY OF ARGUMENT............................................................................

II.   FACTUAL AND PROCEDURAL BACKGROUND.........................................................

    A.  The Lawsuit....................................................................................

    B.  Negotiation of the Settlement..........................................................

    C.  The Settlement Terms.....................................................................

III.  THE PROPRIETY OF APPROVAL.........................................................................

    A.  The Court Should Approve the FLSA Settlement.......................................

        a.  The Proposed Settlement Is the Product of Contested Litigation.............................

        b.  The Proposed Settlement Reflects a Fair and Reasonable Resolution of a *Bona Fide* Dispute Between the Parties..................................................................

            i.    *Bona Fide* Dispute Between the Parties Over Liability..................................

            ii.   The Proposed Settlement Is Fair and Reasonable..........................................

                1.    There is no risk of fraud or collusion..................................................

                2.    This is a complex case with high expenses and the duration could last many years......................................................................................

                3.    The Parties have engaged in substantial discovery...........................

                4.    There is no guarantee of success on the merits..................................

                5.    Experienced Counsel Support the settlement …………………

                6.    The Settlement distribution are fair, reasonable and adequate...........

    B.  The Requested Service Award Should Be Approved.............................................

C.  Plaintiff's Counsel's Attorney's Fees and Litigation Costs Are Reasonable and Should Be Approved................................................................................................

    a.  Plaintiff's Requested Attorney's Fees Are Reasonable............................

    b.  Society's Interest in Rewarding Attorneys.................................................

D.  Value of Service Rendered on an Hourly Basis......................................................

E.  Complexity of the Litigation...................................................................................

F.  Professional Skill and Standing of Counsel............................................................

G.  Plaintiff's Litigation Costs Should Be Approved....................................................

H.  The Court Should Approve the Settlement Administrator.......................................

IV.   CONCLUSION.............................................................................................................

# TABLE OF AUTHORITIES

TABLE OF AUTHORITIES

Adcock-Ladd v. Secretary of Treasury,

227 F.3d 343 (6th Cir. 2000).............................................................................

Blum v. Stenson,

465 U.S. 896 (1984)..........................................................................

Bogosian v. Gulf Oil Corp.,

621 F. Supp. 27 (E.D. Pa. 1985)..........................................................................

Brooklyn Savings Bnk v. O' Neil,

324 U.S. 697 (1945)..........................................................................

Carr v. Bob Evans Farms, Inc.,

No. 1:17-CV-1875, WL 7508650, at *2 (N.D. Ohio July 27, 2018).....................................

Castillo v. Morales, Inc.,

2015 WL 13021899, at *5 (S.D. Ohio Dec. 22, 2015)............................................

Connectivity Sys. Inc. v. Nat'l City Bank,

2011 WL 292008, at *14 (S.D. Ohio Jan. 25, 2011).........................................................

Cornell v. World Wide Business Servs. Corp.

2015 WL 6662919, at *2 (S.D. Ohio Nov. 2, 2015)............................................................

Crawford v. Lexington-Fayette Urban County Government,

2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008).........................................................

Crosby v. Bowarter Inc. Ret. Plan,

262 F. Supp. 2d 804 (W.D. Mich 2003)...............................................................................

Dillworth v. Case Farms Processing, Inc.,

No. 5:08-CV-1694, 2010 WL 776933, at *6 (N.D. Ohio Mar. 8, 2010)..................

v

Enterprise Energy Corp. v. Colombia Gas Transmission Corp.,

137 F.R.D. 240 (S.D. Ohio 1991).......................................................................................

Fegley v. Higgins,

19 F.3d 1126 (6th Cir. 1994).................................................................................................

Filbyv. Windsor Mold U.S.A, Inc.

2015 WL 1119732, at *2 (N.D. Ohio March 11, 2015).........................................................

Geier v. Sundquist,

372 F.3d 784 (6th Cir. 2004)................................................................................................

Granada Invs., Inc. v. DWG Corp.,

962 F.2d 1203 (6th Cir. 1992)...............................................................................................

Hainey v. Parrot,

617 F. Supp.2d 668 (S.D. Ohio 2007)...........................................................................

In re Broadwing, Inc. ERISA Litig.,

252 F.R.D. 369 (S.D. Ohio 2006).......................................................................................

In re Dunn & Bradstreet Credit Services Customer Litigation,

130 F.R.D. 366 (S.D. Ohio 1990)..................................................................................

In re Jackson Lockdown/MCO Cases,

107 F.R.D. 703 (E.D. Mich 1985).......................................................................................

In re Minolta Camera Products Antitrust Litigation,

666 F. Supp. 750 (D. Md. 1987).........................................................................................

In re Southern Ohio Correctional Facility,

175 F.R.D. 270 (S.D. Ohio 1997)..........................................................................................

Johnson v. Midwest Logistics Sys., Ltd.,

vi

2013 WL 2295880, at *5 (S.D. Ohio May 24, 2013)...........................................................

Landsberg v. Acton Enterprises, Inc.,

2008 WL 2468868 at *1 (S.D. Ohio June 16, 2008)..............................................................

Lewis v. Huntington Nat'l Bank,

2013 WL 12231327, at *3 (S.D. Ohio May 30, 2013)..................................................

Lonardo v. Travelers Indem. Co.,

706 F. Supp.2d 766 (N.D. Ohio 2010).................................................................................

Louisville Black Police Officers Ord. v. City of Louisville,

700 F.2d. 268 (6th Cir. 1983)...............................................................................................

Lynn's Food Stores, Inc. v. U.S.,

679 F.2 1350 (11th Cir. 1982)...............................................................................................

Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust,

834 F.2d 677 (7th Cir. 1987)................................................................................................

Ortiz v. Fibreboard Corp.,

527 U.S. 815 (1999).............................................................................................................

Ramey v. Cincinnati Enquirer, Inc.,

508 F.2d 1188 (6thy Cir. 1974)............................................................................................

Rawlings v. Prudential-Bache Props., Inc.,

9 F.3d 513 (6th Cir. 1993)....................................................................................................

Swigart v. Fifth Third Bank,

2014 WL 3447947, at *7 (S.D. Ohio Juky 11, 2014)............................................................

UAW v. General Motors Corp.,

vii

497 F.3d 615 (6th Cir. 2007)....................................................................................

United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n Local 307 v. G

& M Roofing and Sheet Metal Co.,

732 F.2d 495 (6th Cir. 1984)....................................................................................

Van Horn v. Nationwide Prop. & Cas. Ins. Co.,

436 F. App' 496 (6th Cir. 2011)................................................................................

Williams v. Vukovich,

720 F.2d.909 (6th Cir. 1983)....................................................................................

Wolfson v. Riley,

94 F.R.D. 243 (N.D. Ohio 1981)...............................................................................

I.      **INTRODUCTION**

The Parties, Christian Emory ("Plaintiff") and Ampler Burgers Ohio, LLC ("Defendant" or "Ampler") respectfully move this Honorable Court to review the Parties' Revised Settlement Agreement (the "Settlement") and for an Order approving the Settlement as fair and reasonable.

On February 28, 2022, the Plaintiff filed a Joint Motion to Approve Settlement. On March 30, 2022, this Court denied the Joint Motion and directed the parties to submit a revised settlement agreement. On April 27, 2022, the parties submitted a Joint Memorandum in support of their Joint Motion to Approve Settlement. On August 2, 2022, the Court again denied the parties Joint Motion to Approve Settlement. On October 6, 2022, after additional arms-length negotiations designed to respond to the Court's concerns, the parties agreed on revised settlement terms and now present the Revised Settlement to the Court for Approval.

II.     **SUMMARY OF ARGUMENT**

The proposed Settlement will resolve bona fide disputes involving allegations of off-the-clock work and meal break violations against Ampler Burgers Ohio under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, as well as Ohio wage-and-hour statutes for those who choose to file a claim. In this case, Plaintiff asserted that Defendant unlawfully failed to pay its hourly, non-exempt Team Leads ("TLs"), for all hours worked. Specifically, Plaintiff alleged that TLs were required by Defendant to clock out and continue to perform unpaid work when the labor to sales ratios became too high, at times perform unpaid work before and after shifts, and remain under the control of Defendant (including by wearing a headset and being ready to respond) during their meal breaks and that this resulted in violations of the FLSA. Defendant adamantly denies liability. Defendant denies that TLs were required to work off-the-clock or requested to

work/remain under the control of Defendant during their meal breaks. As a result, Defendant contends that there are no violations of the FLSA or Ohio law.

The Parties respectfully submit that the proposed Settlement is fair and reasonable and satisfies the criteria for approval under § 216(b) of the FLSA. The Settlement was achieved during arms-length negotiations among the Parties, conducted by experienced counsel, and reached after a full day mediation with Michael Russell, a well-respected mediator of FLSA collective actions. The Parties then engaged in subsequent arms-length negotiations in an attempt to resolve the issues identified by this Court in its August 2, 2022 Order.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Lawsuit

On August 12, 2020, Plaintiff, Christian Emory, filed this matter (the "Lawsuit") as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, on behalf of himself and other non-exempt TLs, asserting off-the-clock work allegations under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219 against Ampler Burgers and Ampler Burgers, Ohio LLC. (Fradin Decl. ¶11). Plaintiff subsequently amended the Complaint to add, Rule 23 allegations, and allegations regarding the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), R.C. 4111.03. Plaintiff subsequently filed a second amended complaint to remove Ampler Burgers, LLC and add meal break violation claims. (*Id*.).

Specifically, as addressed above, Plaintiff alleged that he and other TLs were required by Defendant to perform unpaid work when the labor to sales ratios became too high, by performing work before and after shifts, and also by being required to remain under the control of Defendant during their meal periods. (*Id*.). As a result, they alleged they were not properly paid for all hours worked. (*Id.*)

The Parties agreed to engage in an informal discovery and due diligence period between February 2021 and September 2021, during which time Defendant provided time and pay records for an agreed-upon sampling of putative Class Members plus Plaintiff's records and the Employee Handbook, to facilitate settlement discussions.  (*Id*. at ¶12.). During that time, Plaintiff engaged an expert to analyze the data along with input from Plaintiff's counsel. (*Id*.)  Defendant independently analyzed liability and damages.  (*Id.*)

The Parties also stipulated to a tolling agreement on the FLSA claims starting July 6, 2021, which was submitted to and approved by the Court. (*Id.* at ¶13; See Dkt. No. 32).  During this case Defendant also propounded discovery on Plaintiff and the parties had many discussions prior to the mediation on the scope of the putative class and the basis for the claims. (*Id*.). Additionally, Plaintiff's Counsel engaged in discussions and correspondence with the Plaintiff and putative class members, including numerous telephone interviews over a number of weeks.  (*Id*.)  During these interviews, Plaintiff's counsel was able to analyze the strengths and weaknesses of Plaintiff's case. (*Id*.)

**B.   Negotiation of The Settlement**

The Parties engaged in substantial investigation and informal discovery prior to negotiating the Settlement.  (*Id.* at ¶9-13.)  Prior to filing the Lawsuit, Plaintiff's Counsel performed a significant amount of research and factual investigation of the claims to set forth a factually specific Complaint for the Court and Defendant.  (*Id.*)  The Parties engaged in a comprehensive exchange of information and discussions regarding Plaintiff's claims and Defendant's defenses to such claims. (Silvers Decl. at ¶ 8.)  This included a complete analysis and calculations of Plaintiff's alleged off-the-clock damages.  (*Id.*) As noted above, the Parties exchanged information and engaged in numerous telephone discussions regarding the calculation of damages and potential

resolution.

On September 28, 2021, the Parties held a mediation in person with Michael Russell, a well-respected mediator of FLSA collective actions and, after a full-day mediation, Michael Russell made a mediator's proposal that was later accepted by the Parties. (Silvers Decl. at ¶ 9.) However, the Parties still engaged in further discussion regarding the terms of the Settlement Agreement, which as noted by the multiple joint reports filed since the notice of settlement, involved many months of discussions in order to come to an agreement. (*Id.*)

On February 28, 2022, the Plaintiff filed a Joint Motion to Approve Settlement. On March 30, 2022, this Court denied the Joint Motion and directed the parties to submit a revised settlement agreement. On April 27, 2022, after significant discussions among counsel regarding the court's prior ruling, the Parties submitted a Joint Memorandum in support of their Joint Motion to Approve Settlement to address the court's concerns. The Parties incorporate this briefing (Docket No. 43) into the current motion. On August 2, 2022, the Court again denied the parties Joint Motion to Approve Settlement. On October 6, 2022, after additional arms-length negotiations, the parties agreed on revised settlement terms and now present the revised settlement to the Court for Approval.

### C.      The Revised Settlement Terms

If approved by the Court, the Revised Settlement will cover Plaintiff, and the participating Class Members. The Revised Settlement Amount is Three Hundred Forty Thousand Dollars ($340,000.00) for settlement of the FLSA claims as well as Ohio state law wage and hour claims alleged or that could have been alleged based on the claims, for those who submit claim forms, which is inclusive of: (a) all of the Individual Settlement Payments to Class Members; (b) A Service Award Payment to Plaintiff as approved by the Court; and (c) Plaintiff's Counsel's

attorneys' fees and expenses as approved by the Court. (Silvers Decl, ¶15, Exh. 2, Section 6).  The Settlement Administrator's costs are being paid out of the settlement and are capped at $10,000 (but are actually $8,500). (*Id.* At Section 10(a); Declaration of Eric Springer ("Springer Decl.") ¶ 14.) The Class Members covered by the settlement are all current or former TLs of Defendant who work or worked in the state of Ohio between January 1, 2019 and December 21, 2021 (the "Relevant Period"). (Silvers Decl, ¶15, Exh. 2, Section 1(a). The time period was restricted to starting in January 2019 as that is when Defendant began doing business in Ohio. *Id.* ¶ 15.

Defendants, through the Qualified Settlement Fund ("QSF"), will pay to each Class Member who submits a timely claim form the amount based on the agreed formula.  (Silvers Decl, ¶15, Exh. 2, at Section 6(c).). The formula used to determine each Class Member's share of the Net Settlement Fund for Payments is based on the number of weeks worked in the Class Period by the Class Member, divided by the total weeks worked by all potential Class Members who could submit claims, and then multiplying this resulting amount by the Net Settlement Amount. (*Id.*)

In exchange for the payments, the Lawsuit will be dismissed with prejudice, and Plaintiff and Class Members who submit a Claim Form will release Defendant from all wage and hour claims, rights, demands, liabilities and causes of action under federal and state law that were specifically alleged in the Lawsuit or that reasonably could have been alleged based on the claims in the Lawsuit, from January 1, 2019 through December 31, 2021, including without limitation all known or unknown claims for unpaid wages, unpaid overtime compensation, liquidated damages, interest, attorneys' fees, and expenses, under the FLSA and Ohio state law. (*Id.* at Sections 18 and 19).

The Revised Settlement increases the gross settlement amount from $300,000.00 to $340,000.00 while also decreasing the attorneys' fees from 40% of the gross settlement

($120,000.00) to 31.54% of the gross settlement ($107,500.00). This increase in the gross settlement amount and subsequent decrease in attorneys' fees is significant and results in a significant increase in the benefit to the class members, leaving $232,500.00 to pay the class, incentive award and administration fees, compared to $180,000.00 in the prior agreement, more than a 29% increase.

## III.   THE PROPRIETY OF APPROVAL

The proposed Settlement is subject to approval by the Court pursuant to § 216(b) of the FLSA. As shown in the attached Declarations of Counsel filed with this motion and as explained below, Court approval is warranted.

### A.   The Court Should Approve the FLSA Settlement.

To approve an FLSA collective action settlement, a district court need only engage in a one-step process. *Carr v. Bob Evans Farms, Inc.,* No. 1:17-CV-1875, 2018 WL 7508650, at *2 (N.D. Ohio July 27, 2018). Because failure to opt in does not bar potential collective action members from bringing their own suits, and this settlement only covers persons who joined/will opt-in to this litigation, collective actions do not implicate the same due process concerns as class actions under Federal Rule of Civil Procedure 23. *Id.* For this reason, the standard for approval of a FLSA settlement is straightforward: a district court should approve a settlement if it was reached as a result of contested litigation and it is a fair and reasonable resolution of a *bona fide* dispute between the parties. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-54 (11th Cir. 1982) (citing *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945); *see also Landsberg v. Acton Enterprises, Inc.*, 2008 WL 2468868 at *1 n.1 (S.D. Ohio June 16, 2008) (the court presiding over an FLSA action may approve a proposed settlement of the action under the FLSA § 216(b) "after scrutinizing the settlement for fairness."). "The existence of a *bona fide* dispute serves as a

guarantee that the parties have not manipulated the settlement process to permit the employer to avoid its obligation under the FLSA." *Filby v. Windsor Mold USA, Inc.,* 2015 WL 1119732, at *2 (N.D. Ohio March 11, 2015).

### a. The Proposed Settlement Is the Product of Contested Litigation.

The Settlement is a result of contested litigation, reached in the context of this Lawsuit. The Lawsuit has been pending for over two years and was resolved only after substantial informal discovery, expert analysis, a mediation, and discussions between counsel, a denied motion for approval, and subsequent additional arms-length negotiations. In this context, the Parties had an opportunity to analyze the pertinent factual and legal issues and assess the strengths and weaknesses of the claims and defenses at issue in this case. (Silvers Decl. ¶¶9-11.) And "the participation of an independent mediator in the settlement negotiations virtually assures that the negotiations were conducted at arm's length and without collusion between the parties." *See Hainey v. Parrot,* 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007). Here, the Parties mediated with Michael Russell whose mediator's proposal was later accepted by the Parties and subsequently revised to increase the benefit to the class.

### b. The Proposed Settlement Reflects a Fair and Reasonable Resolution of a *Bona Fide* Dispute Between the Parties.

The second prong of the Court's settlement approval inquiry focuses on two issues: (1) confirming the existence of a *bona fide* dispute between the Parties and (2) reviewing the fairness and reasonableness of the proposed settlement. Both issues are satisfied here.

### i. *Bona Fide* Dispute Between the Parties Over Liability.

Plaintiff's Counsel performed a thorough investigation regarding the claims. (Silvers Dec. ¶ 16-19.) Plaintiff alleges that he and other similarly-situated TLs were required by Defendant to perform unpaid work off-the-clock including remaining under the control of Defendant during

meal breaks. (Silvers Dec. ¶ 20). Defendant adamantly denies that it engaged in any unlawful or improper conduct, including permitting any off-the-clock work and denies all liability and damages of any kind to anyone regarding Plaintiff's claims.

The Parties also dispute whether collective treatment of Plaintiff's FLSA claims was appropriate. Defendant would oppose a Motion for Conditional Certification and if the Court denied Plaintiff's Motion for Certification or granted Defendant's decertification motion, the 349 Class Members who will benefit from this settlement would need to file individual lawsuits in order to proceed with their individual claims.

### ii. The Proposed Settlement Is Fair and Reasonable.

"The need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'" *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008). The Sixth Circuit uses seven factors to evaluate settlements, and the *Crawford* court applied those factors in assessing the fairness of an FLSA settlement:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. General Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir. 1992); *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir. 1983)), *quoted in Crawford*, 2008 WL 4724499 at *3; *see also Dillworth v. Case Farms Processing, Inc.*, No. 5:08-CV-1694, 2010 WL 776933, at *6 (N.D. Ohio Mar. 8, 2010).

As detailed above, Plaintiff alleges that he and other similarly-situated employees were required by Defendant to perform unpaid work off-the-clock and remain under the control of

Defendant during unpaid meal breaks, and as a result were not properly paid for all hours worked. The Plaintiff was able to give reasonable estimates of the hours worked off the clock per week by Class Members based on his experience as a TL and communications with other TLs as well as working at multiple locations for Defendant. (Silvers Dec. ¶ 21). Based on this, Plaintiff's expert analyzed the sampling of putative Class Members based on the following assumptions: 1) 3 hours off the clock each week for each class member for off the clock when required to clock out due to the sales/labor ratio[1] and also for performing tasks including traveling to other locations or errands for supplies, and 2) 2.5 hours on average per week under the control of Defendant during meal periods[2]. (Silvers Dec. ¶ 22). Using these numbers, communications with numerous class members regarding their experiences and the records, Plaintiff's expert calculated that for the FLSA claims, there was $399,540.95 in wages owed to Settlement Class members for working off the clock besides during meal periods and $182,019.02 owed to them for remaining under the control of Defendant during meal periods. (*Id.*) These add up to a total of $581,559.97 in damages, meaning the settlement would represent about 58.46% of the maximum available wages. (*Id.*) Plaintiffs also alleged liquidated damages would be owed. (*Id.*) At most, this would double the above amount to $1,163,119.94, meaning the settlement would then represent about 29.23% of the maximum available backpay and penalties. (*Id.*) However, as addressed in the April 27, 2022 briefing filed by the parties, there is difficulty in obtaining liquidated damages.

---

[1] Which Plaintiff alleged required TLs to clock out and continue working when the labor to sales ratio exceeded 22% during the day and 18% at night. If it does, then TLs were to clock out employees and send them home and then if still needed clock themselves out but they had to keep working. Defendant maintains that to the extent hours worked were affected by any "labor to sales ratio," employees were sent home and were never required or asked to work off the clock.

[2] This was calculated using 50% of the workweeks based on the records and representations by Defendant that TLs clocked out only around 40% of the time for meal periods in the first instance in the sample (and thus would be only owed wages at best for this percentage), but Plaintiff believes it would be higher for the putative class.

Defendant denies all of the claims informing Plaintiff's expert's analysis. (*Id.*) Defendant denies there was any required off-the-clock work at any times, including during unpaid meal periods. (*Id.*) Defendant denies that any "sales/labor ratio" ever resulted in employees working off the clock. (*Id.*) Even if there was individual, unsanctioned off the clock work, Defendant contends it was nowhere near the number of hours per week alleged by Plaintiff. (*Id.*) Defendant further contends that liquidated damages are not recoverable here based on the viability of the good faith defense to liquidated damages under 29 U.S.C. 260. (*Id.*) Defendant contends there is no evidence that Defendant encouraged employees to work off the clock or remain under its control during meal periods and, to the extent they worked off the clock, it was in violation of Defendant's policies. (*Id.*) Defendant also has and would contend that TLs were not required to clock out and remain there based on the labor to sales ratio. Defendant also denies that TLs worked off the clock traveling to other locations or running errands for supplies, and maintains that to the extent any such travel did happen, it would be completely individualized to the unique possibility that there were multiple locations in the vicinity. This had to be taken into account in evaluating the potential recovery of liquidated damages. (*Id.*) Further, Defendant disputed that anyone in the Settlement Class worked off the clock at all and contends that even the above numbers used by Plaintiff were excessively high assumptions. (*Id.*)

While the above percentages of recovery are reasonable by themselves based on the facts of this case, they do not take into account the risks/factors Plaintiffs used to evaluate the reasonableness of the settlement. (Silvers Dec. ¶ 23). When taken into account, these would decrease the maximum potential recovery and thus result in the settlement representing a higher percentage of the total possible recovery. (Id.) Those risks include: (i) strength of defenses; (ii) risk of certification being denied; (iii) risk of losing on dispositive motions that eliminate

all/some claims/evidence; (iv) risk of losing at trial or prevailing on only some claims; (v) risk that the amount of off the clock work would be shown to be less than the above amounts per week; (vi) risk that no liquidated damages would be awarded; and  (vii) chances of a favorable verdict reversed on appeal. (Id.)  As such, Plaintiff's counsel opines that the settlement is fair and reasonable and should be approved. (Id.)  Compare *Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933, at *8 (N.D. Ohio 2010) (finding that recovery of one-third of the owed wages for class member, before deducting attorneys' and costs is "well-above" average); *Mars Steel Corp. V. Cont'l Ill. Nat'l Bank & Trust*, 834 F.2d 677 (7th Cir. 1987)  (finding a 10% recovery of total lost wages sought to be adequate); *In re Newbridge Networks Sec. Litig.*,1998 WL 765724 (D.D.C. Oct. 23, 1998)   ("[A]n agreement that secures roughly six to twelve percent of a potential trial recovery, while preventing further expenditures and delays and eliminating the risk that no recovery at all will be won, seems to be within the targeted range of reasonableness."). Plaintiff's counsel has previously resolved numerous cases in the same manner that this case is being resolved.  (Fradin Decl. ¶27).

### 1.  There is no risk of fraud or collusion.

This settlement was fairly and honestly negotiated.  Plaintiff's Counsel and Defendant's Counsel each have extensive experience litigating FLSA claims, including claims for unpaid hours worked.  (*See* Silvers Decl. and Fradin Decl. regarding Plaintiff's counsel).  The Settlement Agreement was achieved only after arms-length and good faith negotiations between the Parties with the assistance of an experienced mediator, occurring after informal substantial discovery, discussions between counsel,  and counsel for the Parties vigorously arguing their legal and factual positions. (Silvers Decl. ¶¶9-14; Fradin Decl. ¶¶9-13,16).  In this context, there is a presumption

that the risk of fraud or collusion is negligible. *Lewis v. Huntington Nat'l Bank*, 2013 WL 12231327, at *3 (S.D. Ohio May 30, 2013) (Marbley, J.); *see also Hainey*, 617 F. Supp. 2d at 673.

> ### 2. This is a complex case with high expenses and the duration could last many years.

The policy favoring the settlement of wage and hour collective actions and other complex cases applies with particular force here.  Employment class and collective actions are expensive and time-consuming.  Moreover, the Parties continue to disagree over the merits and viability of certification of Plaintiff's claims and Defendant further contends that even if violations were shown, no liquidated damages would be recoverable (as detailed above).  Furthermore, the Parties disagree about the merits of Plaintiff's claims and the viability of Defendants' various defenses. If the litigation continued, Plaintiff would have faced obstacles and uncertainties, including motions for decertification and summary judgment, as well as potentially a trial.  *See, e.g., Lewis v. Huntington Nat'l Bank*, No. 2:11-CV-00058, 2013 WL 12231327, at *3 (S.D. Ohio May 30, 2013) (Marbley, J.) (recognizing that, absent settlement, wage and hour plaintiffs "would have had to show, through testimony and documentary evidence, the specific hours, times, and dates worked—a process requiring extensive and expensive additional discovery"); *Cornell v. World Wide Business Servs. Corp.,* 2015 WL 6662919, at *2 (S.D. Ohio Nov. 2, 2015) (decertifying collective because of "disparate factual and emloyment settings" of the individual opt-in plaintiffs).

This matter has already been litigated for over 2 years and included substantial discovery and discussions regarding the claims. Further, the Parties have already incurred substantial expenses, prior to depositions taking place, including Plaintiff's Counsel incurring $10,623.94 in expenses.  (Silvers Decl. ¶31; Fradin Decl. ¶20.)

If forced to litigate this case further, the Parties would incur substantial expenses and fees in continuing discovery, including to take depositions of any named expert witnesses, Plaintiff, other putative Class Members as well as Rule 30(b) depositions of Defendant as well as further motion practice, including dispositive motions, a decertification motion, and a Rule 23 Motion for Certification (which could face additional hurdles as a result of SB49), as well as further discovery to take depositions of any named expert witnesses, Plaintiff, other putative Class Members as well as Rule 30(b) depositions of Defendant. (Silvers Decl. ¶30.)  The out-of-pocket costs alone would likely be significant. By the time of trial, the Parties' attorneys' fees on each side are likely to be in the millions, and costs exceeding six-figures. (*Id.*)

In view of the costs, risks and delay of continued litigation balanced against the benefits of settlement, the Revised Settlement is in the best interests of the Plaintiff and Class Members.  It provides substantial relief to Class members  (which are significant as shown below based on the payments to putative Class Members) and amplifies the benefits of that relief through the economies of collective resolution.  (*Id.* at 31.)

### 3.  The Parties have engaged in substantial discovery.

The Parties have engaged in substantial investigation prior to and during the settlement negotiations and the issues are well understood by both sides.  (Silvers Decl. at ¶¶8-14, Fradin Decl. ¶¶9-13, 16) Relevant information was produced, including time and payroll records for the Plaintiff and other putative Class Members, class size and workweek data and the Employee Handbook.  (Silvers Decl. at ¶10.)

The legal issues in the case were thoroughly researched and briefed by Counsel for the Parties.   (*Id.* at ¶11.)  Additionally, through the mediation the issues were further explored and

relevant information on the claims and basis thereof was exchanged. As such, all aspects of the dispute are well-understood by both sides.

### 4. There is no guarantee of success on the merits.

The Parties recognize that the final outcome of the litigation is uncertain and that achieving a final result through the litigation and appeal process would require substantial additional risk, time and expense. (*Id.* at ¶12.) The risk was further addressed in the April 27, 2022 briefing. Defendant denies that it engaged in any unlawful or improper conduct including, expressly, all off-the-clock work claims of Plaintiff and Class Members; denies all liability and damages of any kind to anyone regarding the claims; and denies that this case could be litigated on a collective and class basis, whether as a Rule 23 class or as an FLSA collective action. (*Id.*)

There is no guarantee that the Plaintiff would prevail on certification of the class or, if granted, whether Plaintiff will prevail on Defendant's anticipated motion to decertify the conditionally certified class or motion for summary judgment. (*Id.* at ¶13.) Moreover, Defendant raises affirmative defenses to Plaintiff's claims, and the outcome of those defenses at trial is uncertain as well. (*Id.*) Continued litigation could be risky for all Parties, and could result in appeals regardless of the outcome of the trial. (*Id.*)

If this ligation continues, Plaintiff faces obstacles and uncertainties, including extensive and expensive discovery, and potential losses during the certification, decertification and summary judgment phases, and a trial. (*Id.* at ¶14.) *See, e.g., Lewis v. Huntington Nat'l Bank*, No. 2:11-CV-00058, 2013 WL 12231327, *3 (S.D. Ohio May, 2013) (Marbley, J.). For example, Plaintiff would have had to show that they were actually performing off-the-clock work or were under the control of Defendant, which would require significant discovery and testimony to establish.

### 5. Experienced Counsel support the revised settlement

The opinions of experienced Counsel of the Parties support the Revised Settlement (*See* Silvers and Fradin Declarations).  Courts should generally "defer to the judgment of experienced counsel who [have] competently evaluated the strength of [their] proofs," *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir. 1983), especially when the case has been developed through discovery. *See In re Broadwing, Inc. ERISA Litig.,* 252 F.R.D. 369, 375 (S.D. Ohio 2006). Plaintiff's counsel supports the Settlement. (Silvers Decl. ¶23; Fradin Decl. ¶¶25-26). Furthermore, Defendant is represented by experienced counsel who also negotiated the settlement. (*Id.*)

## 6. The Revised Settlement distributions are fair, reasonable and adequate.

In reviewing a FLSA collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499 (E.D. Ky. Oct. 23, 2008) (citing *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 855 (1999)). In the present case, the Revised Settlement Agreement provides that the Settlement Payment, after deduction of the Service Award to the Plaintiff, attorneys' fees and litigation costs reimbursements to Plaintiff's Counsel and Settlement Administration costs, will be divided into pro rata Individual Settlement Payments to Class Members.

 The benefit that the Class will receive from the Net Settlement Amount as compared to the maximum they potentially could have received if they had prevailed at trial is fair and reasonable. Based on a Net Settlement Amount of $208,648.89, the Individual Settlement Payments range from a minimum payment of $18.75 to a maximum payment of $2,812.49. (Springer Decl. ¶ 13.)  The Net Settlement Amount represents $597.85 per Class Member on average. (*Id.*)  As noted above, the recovery represents a significant percentage of the alleged wages owed, which is an excellent result. *Dillworth*, 2010 WL 776933, at *8 (finding that a

recovery of one-third of the owed wages for class members, before deducting attorney's fees and costs, is "well above" average); *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust,* 834 F.2d 677, 682 (7th Cir.1987) (finding adequate a settlement of 10% of the total sought due to risks and costs of trial).[3]

### B.  The Requested Service Award Should Be Approved.

The Settlement contemplates providing a $5,000 Service Award to the Plaintiff.  As stated in *In re Dunn & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366 (S.D. Ohio 1990):

> Numerous courts have not hesitated to grant incentive awards to representative plaintiffs who have been able to effect substantial relief for classes they represent.

130 F.R.D. at 373 (citing *Wolfson v. Riley*, 94 F.R.D. 243 (N.D. Ohio 1981); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985); *In re Minolta Camera Products Antitrust Litigation*, 666 F. Supp. 750, 752 (D. Md. 1987)).

In this Circuit, service awards to representative plaintiffs are "typically justified when named plaintiffs expend more time and effort beyond that of other Class Members in assisting class counsel with litigation, such as by actively reviewing case and advising counsel in prosecution of case."  *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273, 276 (S.D. Ohio 1997).

---

[3]    *See also Lazy Oil Co. v. Witco,* 95 F.Supp.2d 290, 339 (W.D. Pa.1997) (approving 35% recovery for the entire class period, and 25.5% of damages within the limitations period); *In re Domestic Air Tranp. Antitrust Litig.,* 148 F.R.D. 297, 325 (N.D. Ga. 1993) (12.7% to 15.3%); *In re Newbridge Networks Sec. Litig.,* 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) (approving settlement and concluding that while "[c]ourts have not identified a precise numerical range within which a settlement must fall in order to be deemed reasonable; [ ] an agreement that secures roughly six to twelve percent of a *potential* trial recovery, while preventing further expenditures and delays and eliminating the risk that no recovery at all will be won, seems to be within the targeted range of reasonableness"); *In re Ravisent Techs., Inc. Sec. Litig.,* 2005 WL 906361, at *9 (E.D. Pa. Apr. 18, 2005) (approving settlement, which amounted to 12.2% of damages, and citing a study by Columbia University Law School, which determined that "since 1995, class action settlements have typically recovered between 5.5% and 6.2% of the class members' estimated losses.") (internal citations omitted).

Courts recognize that "differentiation among class representatives based upon the role each played may be proper in given circumstances." *Dun & Bradstreet*, 130 F.R.D. at 374 (citing *In re Jackson Lockdown/MCO Cases*, 107 F.R.D. 703, 710 (E.D. Mich. 1985)).  *See also Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (among the factors warranting incentive awards are the "time and effort spent" by the individuals in question and "whether these actions resulted in a substantial benefit to Class Members").

In the present case, Counsel Michael Fradin's Declaration establishes the basis for Plaintiff's contention that the proposed Service Award is proper and reasonable.  (Fradin Decl. at ¶ 21-24.)  Plaintiff's services were effective.  (*Id.*)  He provided extensive factual information to Plaintiff's Counsel and faithfully engaged in numerous and extensive calls and other communications with Plaintiff's Counsel.  (*Id.*)  Moreover, he subjected himself to the responsibilities of serving as Plaintiff in a lawsuit against his former employer.  (*Id.*)[4] This includes (a) the emotional and mental stresses of dealing with this lawsuit, and the potential of having a judgment entered against him if he lost; (b) exposure to attorneys' fees and costs if Defendant would have won; (c) the real potential of losing job opportunities because he filed/litigated this case; and (d) for the substantial hours dedicated to this case both before and after this lawsuit was filed, which was time lost from being with his  family, friends and work. (*Id.*).

The requested payments are proportional to service payments recently awarded to plaintiffs in other FLSA actions. *See Castillo v. Morales, Inc.*, 2015 WL 13021899, at *5 (S.D. Ohio Dec. 22, 2015) (Marbley, J.) (awarding $8,000 service payment to class representative in wage and hour

---

[4] *See Castillo v. Morales, Inc.*, 2015 WL 13021899, at *5 (S.D. Ohio Dec. 22, 2015) (Marbley, J.) (awarding $8,000 service payment to class representative in wage and hour case); *Swigart v. Fifth Third Bank*, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014) (awarding $10,000 service payments to two class representatives in wage and hour case); *Johnson v. Midwest Logistics Sys., Ltd.,* 2013 WL 2295880, at *5 (S.D. Ohio May 24, 2013) (awarding $12,500 service award).

case); *Swigart v. Fifth Third Bank*, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014) (awarding $10,000 service payments to two class representatives in wage and hour case); *Johnson v. Midwest Logistics Sys., Ltd.,* 2013 WL 2295880, at *5 (S.D. Ohio May 24, 2013) (awarding $12,500 service award).[5]

**C.** **Plaintiff's Counsel's Attorneys' Fees and Litigation Costs Are Reasonable and Should Be Approved.[6]**

**a. Plaintiff's Requested Attorneys' Fees Are Reasonable.**

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). The attorney's fees provision of the FLSA exists to enable plaintiffs to employ reasonably competent lawyers without cost to themselves if they prevail, and thereby to help ensure enforcement of the substantive provisions of the Act. 29 U.S.C. §216(b).

In *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994)*,* the Sixth Circuit held that the FLSA's mandatory attorneys' fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley,* 19 F.3d at 1134 (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 502 (6th Cir.1984)).

There are two methods for determining whether a fee is reasonable: the lodestar method and the percentage-of-the-fund method. *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App' 496, 498 (6th Cir. 2011). The Court has the discretion to use either the lodestar method or a

---

[5] *See also*, *Koszyk v. Country Fin.*, 2016 WL 5109196, at *6-7 (N.D. Ill. Sept. 16, 2016) (approving $10,000 service payments for each of seven plaintiffs in a FLSA collective action).

[6] While Defendant does not oppose Plaintiff's request for approval of payment of attorney's fees, Defendant does not join in the request.

percentage of the common fund to award reasonable attorney fees. *Castillo v. Morales, Inc.*, 2015 WL 13021899, at *6 (S.D. Ohio Dec. 22, 2015) (Marbley, J.) (*citing See Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516-17 (6th Cir. 1993)). "In the Southern District of Ohio, the preferred method is to award a reasonable percentage of the fund, with reference to the lodestar and the resulting multiplier." *Kimber Baldwin Designs, LLC v. Silv Commc'ns, Inc.*, 2017 WL 5247538, at *5 (S.D. Ohio Nov. 13, 2017) (quotations and citation omitted). Here, Plaintiff request that the Court use the percentage method and award them 31.54% of the settlement fund ($107,500), which as noted below is significantly lower than Class Counsels' lodestar. See *Giesman v. Lifetime Fitness, S.D. Ohio 2:18-cv-01123 Doc #45 at 8,* awarding 40% of the common fund to Class Counsel and noting that lodestar exceeded 40%.

Plaintiff's Counsel's Declaration contains information that demonstrates the reasonableness of the proposed fees and expenses. (*See* Fradin and Silvers Declarations). The litigation expenses sought to be reimbursed are proper and reasonable. Plaintiff's Counsel has incurred expenses in the amount of $10,623.94 during the litigation of this action. (Fradin Dec. at ¶20; Silvers Decl. at ¶31.)

The Sixth Circuit considers the following factors in determining whether the requested fee is reasonable: (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent-fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides. *Castillo*, 2015 WL 13021899, at *6 (Marbley, J.) (citing, among others, *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974)). Each of these factors weighs strongly in favor of the reasonableness of the requested fee.

### 1.  Value of the Benefit Provided

Under this Settlement, all Class Members receive payments representing a substantial recovery on their alleged off-the-clock work claims. Instead of the risks of continued litigation, as detailed above, the Settlement Class will receive significant back pay.  As noted above, this amounts to an average of $597.85 per class member and a significant portion of the total maximum recovery, which is a meaningful recovery for the Class. See *Dillworth*, 2010 WL 776933, at *8 and *Rotuna,* 2010 WL 2490989 at *8.

### 2.  Value of Services Rendered on an Hourly Basis

For purposes of determining a reasonable attorney's fee, the hourly rate must be calculated in accordance with the prevailing market rate in the relevant community.  *Blum v. Stenson*, 465 U.S. 896, 895 (1984). Generally, the "prevailing market rate [is] defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Geier v. Sundquist,* 372 F.3d 784, 791 (6th Cir.2004) (citing *Adcock–Ladd v. Secretary of Treasury,* 227 F.3d 343, 350 (6th Cir. 2000)). There is, however, an exception to the general rule that the prevailing market rates of the local community govern the lodestar analysis, and, in this circuit, the exception is known as the "out-of-town specialist." *See Hadix,* 65 F.3d at 535 (citation omitted); *Louisville Black Police Officers Org. v. City of Louisville*, 700 F.2d 268, 278 (6th Cir. 1983) ("District courts are free to look to a national market, an area of specialization market or any other market they believe appropriate to fairly compensate particular attorneys in individual cases."). Attorneys who specialize in particular fields tend to charge more for their services and tend to be found in larger cities where the cost of litigation is more expensive. *See Chrapliwy,* 670 F.2d at 769 (emphasis added). When fees are sought for an "out-of-town specialist," "courts must determine (1) whether hiring the out-of-town specialist was reasonable in the first instance, and (2) whether the rates sought by the out-of-town specialist are reasonable for

an attorney of his or her degree of skill, experience, and reputation." *Hadix,* 65 F.3d at 535, citing *Chrapliwy,* 670 F.2d at 768–69.

Michael L. Fradin is highly experienced in civil rights and employment matters and the only lawyer in Southeast Ohio who represents plaintiffs in class and collective actions. (Fradin Decl. ¶¶3-7). It was reasonable for Plaintiff to also retain Ian Silvers who is an experienced and accomplished wage and hour attorney in California, and whose practice includes similar representation across the country. (Silvers Decl. ¶¶3-7, Exhibit 1)

Here, to date, Plaintiff's Counsel's total lodestar fees are $243,117.50 (Silvers Decl. ¶¶ 28-29; Fradin Decl. ¶ 15). The allocation of fees by timekeeper and their reasonable rates are detailed in the supporting declarations attached hereto. (*Id.*).

In this complex class action settlement, which resolves the claims of hundreds of employees, Plaintiff's Counsel's lodestar is likely to substantially increase in the future. Plaintiff's Counsel will spend time fulfilling their obligations in the Settlement Agreement, administering the Settlement, and responding to Plaintiff's and Class Member inquiries. *Id*.

### 3. Whether Services Were Undertaken on Contingent-Fee Basis

Plaintiff's Counsel undertook the representation on a purely contingent basis. (Silvers Decl. ¶ 32). Thus, Plaintiff's Counsel has borne all of the risk that accompanies contingent-fee representation, including the prospect – very real in this case, that the investment of substantial attorney time and resources would be lost. *Id*. Counsel should be compensated for this risk. *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 796 (N.D. Ohio 2010); *see also Crosby v. Bowater Inc. Ret. Plan*, 262 F. Supp. 2d 804, 814 (W.D. Mich. 2003) ("contingency serves to justify the higher fee"). "There is a public interest in ensuring that attorneys willing to represent clients in class action litigation are adequately paid so that they and others like them will continue to take on such cases." *Connectivity Sys. Inc. v. Nat'l City Bank*, 2011 WL 292008, at *14 (S.D.

21

Ohio Jan. 25, 2011). Here, the contingency fee is a **decrease** from Plaintiff's Counsels' lodestar, and so should be awarded without hesitation. In fact, awarding the requested fees would result in a negative multiplier of Class counsels' lodestar (reducing the lodestar 51.5%). (Silvers Decl. ¶24).

Furthermore, had this case not settled, Plaintiff's Counsel would have vigorously litigated the case without any promise of success and compensation. (Silvers Decl. at ¶ 25.) At every step of the litigation, Defendant could have succeeded. Therefore, Plaintiff was at great risk for non-payment. (*Id.*) This risk of non-payment strongly supports the amount requested here.

### 4. Society's Interest in Rewarding Attorneys

There is no doubt that "society certainly has an interest in incentivizing attorneys to assist in combatting illegal nonpayment of wages." *Castillo*, 2015 WL 13021899, at *6 (Marbley, J.) (citing *Fegley v. Higgins*, 19 F.3d 1126, 1134-35 (6th Cir. 1994)). Plaintiff's counsel took on this matter to represent Plaintiff in his off-the-clock work claims against Defendant and litigated for over 17 months against experienced Defendant's Counsel. This factor supports awarding the requested fees to encourage qualified attorneys to represent employees in claims for unpaid wages.

### 5. Complexity of the Litigation

"Wage-and-hour collective and class actions are, by their very nature, complicated and time-consuming." *Swigart,* 2014 WL 3447947, at *7 (citation omitted). Had this matter not resolved, the parties faced the potential of complex motion practice, both over the merits, as well as on collective treatment.

Plaintiff's Counsels' Declarations contain information that demonstrates the reasonableness of the proposed fees and expenses. Plaintiff's Counsel has worked diligently in representing Plaintiff and the Putative Class Members. Prior to filing the Lawsuit, Plaintiff's Counsel performed a significant amount of research and factual investigation of the claims to set forth a factually specific and accurate Complaint for the Court and Defendant. (Fradin Decl, ¶¶7-

10.) Over the course of over 17 months (before the first settlement agreement), this matter was contentiously litigated.

### 6. Professional Skill and Standing of Counsel

Counsel are highly qualified and experienced, and each have substantial credentials in class and collective action litigation. (Silvers Decl. ¶¶ 3-7, Exhibit 1; Fradin Decl. ¶3-7.) For the foregoing reasons, Plaintiff's Counsel's requested attorney's fees of $107,500 should be approved.

### D.    Plaintiff's Litigation Costs Should Be Approved.

The litigation expenses sought to be reimbursed are proper and reasonable.  Expenses are estimated to be approximately $10,623.94, which includes, but is not limited to, costs for items such as filing fees, service and expert fees (Silvers Decl. ¶ 31, Exhibit 4; Fradin Decl. ¶20.) The expenses incurred are reasonable and their reimbursement should be approved. *Swigart*, 2014 WL 3447947, at *7 (reimbursing $39,406.46 in out-of-pocket litigation expenses" that "were reasonable and necessary in connection with litigating and resolving this case and are reimbursable.").

### E.    The Court Should Approve the Settlement Administrator

 Plaintiff requests that the Court approve Simpluris, Inc. as the Settlement Administrator to be paid out of the Settlement Fund. Simpluris has vast experience in such matters and this experience as well as the duties it has and will perform are detailed on the attached declaration. (Exh. 3, Springer Decl. at ¶¶5-7, Exhs. A and B.)

## IV.    CONCLUSION

For the reasons addressed above, the Parties respectfully request that this Court approve the Settlement by entering the Proposed Order Approving Settlement and Dismissal with Prejudice attached as Exhibit A to the Settlement Agreement.

///

///
///
///
///

Respectfully submitted,


DATED: October 24, 2022          */s/ Michael L. Fradin*
                                 Michael L. Fradin

                                 MICHAEL L. FRADIN
                                 *mike@fradinlaw.com*
                                 LAW OFFICE OF MICHAEL L. FRADIN
                                 8401 Crawford Ave. Ste. 104
                                 Skokie, IL 60076
                                 Telephone: 847/986-5889
                                 Facsimile: 847/673-1228


DATED: October 24, 2022          */s/ Ian M. Silvers*
                                 Ian M. Silvers

                                 IAN M. SILVERS
                                 bchase@bisnarchase.com
                                 BISNAR|CHASE LLP
                                 1301 Dove Street, Suite 120
                                 Newport Beach, California 92660
                                 Telephone:  949/752-2999
                                 Facsimile:  949/752-2777


## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2022, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all Parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.


                                 */s/ Michael L. Fradin*


4878-6612-1275, v. 1